**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JOSEPH SHINE-JOHNSON,** *et al.*,

      **Plaintiffs,**

                                **Civil Action 2:20-cv-5919**
    **v.**                              **Judge Sarah D. Morrison**
                                  **Magistrate Judge Elizabeth P. Deavers**

**MIKE DEWINE,** *et al.*,

      **Defendants.**

## REPORT AND RECOMMENDATION

This matter is now before the Court for an initial screen of Plaintiffs' Amended Complaint, ECF No. 59, under 28 U.S.C. §§ 1915(e)(2), 1915A to identify cognizable claims and to recommend dismissal of Plaintiffs' Amended Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A.

For the reasons that follow, the Undersigned **RECOMMENDS** that Plaintiffs be **PERMITTED** to proceed with their collective claims against Defendant David Gray in his individual capacity, but that Plaintiffs' remaining collective claims be **DISMISSED** in their entirety.  The Undersigned **FURTHER RECOMMENDS** that that Plaintiffs Antonio Henderson, Jarron Earley-Tabor, James Goodson, Richard J. Taborn, Troy Mason, and Lonnie Hill's individual medical deliberate indifference claims against Defendant Joseph Murphy be **PERMITTED** to proceed.

1

## I.

This is not the first time the Court has performed an initial screen on Plaintiffs' claims. On April 12, 2021, the Undersigned issued an Order and Report and Recommendation, recommending that the Court dismiss Plaintiffs' claims in their entirety and advising Plaintiff James Goodson that he had the right to file a separate action to pursue claims for medical deliberate indifference.  (ECF No. 38.)  After various Plaintiffs filed objections, the Undersigned withdrew the Order and Report and Recommendation and granted all Plaintiffs leave to file an Amended Complaint.  (ECF No. 45.)  On May 11, 2021, Plaintiffs timely filed an Amended Complaint.  (ECF No. 59.)

Plaintiffs' Amended Complaint expands upon the allegations set forth in Plaintiffs' original Complaint, adding specific allegations relating to certain Defendants and providing additional factual detail to support Plaintiffs' theory of the case.  Plaintiffs are fourteen inmates at Belmont Correctional Institution ("BCI") and collectively allege that Defendants are not adhering to proper social distancing and other public health-related protocols in light of the COVID-19 pandemic.  (*See generally* ECF No. 59.)  Specifically, Plaintiffs allege that Defendants "are directly responsible for the operations of [BCI] during Covid-19 and have failed to correct the overcrowding in an emergency and are [] complicit in creating the dangerous environment for the deadly disease to rapidly spread."  (*Id.* at PAGEID # 658.)  Plaintiffs also allege that Defendants have decided to let COVID-19 "run its course" through BCI, and that Defendants' deliberate indifference to Plaintiffs' health and well being "places them in significant danger of contracting this deadly virus and/or any infectious disease in the future." (*See id.* at PAGEID ## 658-664.)  Separately, six Plaintiffs – Antonio Henderson, Jarron Earley-Tabor, James Goodson, Richard J. Taborn, Troy Mason, and Lonnie Hill – also allege that they

"are in need of chronic care for serious medical needs" but have been denied that chronic care. (*See id.*at PAGEID ## 668-669.)

Plaintiffs assert claims against the following Defendants in their individual and official capacities:  (1) Mike DeWine, Governor; (2) Amy Acton, State of Ohio Department of Health Director; (3) Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Corrections ("ODRC"); (4) Ernie Moore, Deputy Director of the ODRC; (5) Eddy Bobby, Regional Director of the ODRC; (6) Dr. Eddy Andrews, Medical Director of the ODRC; (7) Karen Stanforth, Chief Medical Inspector; (8) David Gray, Warden of BCI; (9) Joseph Murphy, BCI Healthcare Administrator; (10) Patrick Haley, Institutional Inspector for BCI; and (11) BCI Unit Manager Taylor.  (*Id.* at ¶¶ 4-15.)

Plaintiffs seek the following relief:  (a) a declaration that "the acts and omissions describe[d] herein violated [Plaintiffs'] right[s] under the [C]onstitution and laws of the [United States]"; (b) a preliminary and permanent injunction "ordering all said Defendants . . . to eliminate the overcrowding of inmates and reduce the population and correct housing units to the ACA standards for the Institution to which inmates are incarcerated to reduce the risk of COVID-19"; (c) injunctive relief "to provide a compassionate release and or pardon to Said Plaintiffs from custody and or all inmates who are allowed for release within indefinitely and or sanctions to eliminate overcrowding and or until all safe prison conditions are met and COVID-19 pandemic subsides"; (d) compensatory damages in the amount of $2.5 million against each Defendant, jointly and severally, who acted in their individual capacities; (e) punitive damages in the amount of $400,000 against each Defendant who acted in their individual capacity; and (f) costs and any additional relief the Court deems just, proper, and equitable.  (*Id.* at ¶¶ 92-99.)

## II.

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to

"lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992).

In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are

assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from

filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490

U.S. 319, 324 (1989)).  To address this concern, Congress included subsection (e)[1] as part of the

statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been
> paid, the court shall dismiss the case at any time if the court determines that--
>
> *     *     *
>
>     (B) the action or appeal--
>
>         (i) is frivolous or malicious;
>
>         (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31.  Thus, § 1915(e) requires *sua sponte*

dismissal of an action upon the Court's determination that the action is frivolous or malicious, or

upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the

basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  *See also*

*Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure

12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)).  Under Rule

8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the

---

[1] Formerly 28 U.S.C. § 1915(d).

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd.*, *P'Ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (emphasis in original).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III.

Plaintiffs bring their collective claims against Defendants under 42 U.S.C. § 1983, which provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

*Id.*  In order to proceed under Section 1983, a plaintiff must prove both that (1) the perpetrator acted under color of state law; and (2) the conduct deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir.1983), *rev'd and remanded sub nom*, *Brandon v. Holt*, 469 U.S. 464 (1985).  As a general rule, a plaintiff proceeding under Section 1983 must allege that the deprivation of his rights was intentional or at least the result of gross negligence.  *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986).  Mere negligence is not actionable under Section 1983.  *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987).

Here, Plaintiffs bring claims against the Governor of Ohio and against various prison officials, including ODRC officials and certain officials at BCI.  The Court will address the claims against each "group" of Defendants in turn.

### A. Defendant DeWine

As was true with Plaintiff's original Complaint, Plaintiffs' allegations against Defendant DeWine are limited.  At the outset, Plaintiffs allege that Defendant DeWine "announced the existence of COVID-19's community spread . . . and restricted large gatherings within Ohio." (ECF No. 59 at ¶ 16.)  Plaintiffs also allege that Defendant DeWine "said he would test every inmate in Ohio prisons and that has not been done," and that through the State of Ohio

6

government website Defendant DeWine "also falsifies information about the deaths and 'social distancing' practices her at [BCI]." (*Id.* at ¶¶ 17, 50.) Plaintiffs also take issue with Defendant DeWine's invocation of an Ohio statute to release certain prisoners, alleging that he went "outside of [his] authority" and created criteria "outside of the codified statute which basically excluded all inmates." (*Id.* at ¶ 80.) Plaintiffs also allege that Defendant DeWine is "directly responsible for the lack of compliance with the standards [at BCI]," is "aware of the lack of compliance," and "[has] done nothing to correct it." (*Id.* at ¶ 43.)

Such allegations are insufficient to state a claim against Defendant DeWine, however, because Plaintiffs again have failed to allege that Defendant DeWine has any specific connection to the actions which Plaintiffs contend are unconstitutional. Construing the Amended Complaint liberally in Plaintiffs' favor, the Court can only discern that Plaintiffs again implicate Defendant DeWine based on his general supervisory powers as the Governor of Ohio. "This Court, and others, have already found such general supervisory powers insufficient to subject a state official to suit." *Smith v. DeWine*, 476 F. Supp. 3d 635, 654 (S.D. Ohio 2020) (collecting cases). "While the Governor may direct broad policy initiatives to various state agencies such as the ODRC, those agencies retain responsibility for direct enforcement of those policies." *Id.* at 654.

Accordingly, the Undersigned **RECOMMENDS** that Plaintiffs' claims against Defendant DeWine be **DISMISSED**.

**B.    ODRC/BCI Defendants**

Plaintiffs also assert claims against Defendants Acton, Chambers-Smith, Moore, Bobby, Andrews, Stanforth, Gray, Murphy, Haley, and Taylor (collectively, the "ODRC/BCI Defendants"). Previously, in analyzing Plaintiffs' original Complaint, the Undersigned noted that "[f]or the most part, however, Plaintiffs' allegations do not refer to any of these Defendants

by name, as Plaintiffs instead discuss the conditions at BCI in general terms." (ECF No. 38 at PAGEID # 452.) The same cannot be said, however, for Plaintiffs' Amended Complaint, as Plaintiffs have undeniably added specific allegations regarding the conditions at BCI and have clarified against whom each allegation is asserted.

At their core, Plaintiffs' allegations take aim at the following actions which Plaintiffs allege allowed for the spread of COVID-19 throughout BCI, *see* ECF No. 59:

- ¶ 18: Alleging that the ODRC/BCI Defendants "are all aware and directly responsible for the [fact] that the [BCI] housing dorms are over populated and houses approximately 2,719 inmates within extremely tight housing units where 'social distancing' is impossible";

- ¶ 19: Alleging that the ODRC/BCI Defendants "are directly responsible for the operations of [BCI] during Covid-19 and have failed to correct the overcrowding . . . and are . . . complicit in creating the dangerous environment for the deadly disease to rapidly spread";

- ¶ 22: Alleging that the ODRC/BCI Defendants are "directly responsible for not testing [] inmates and the housing staff, and blindly transferring inmates around the compound practically at will without knowing if they are infected";

- ¶ 26: Alleging that the ODRC/BCI Defendants "acted [with] deliberate indifference [and] are all directly responsible and aware that the staff was sick and there was no testing, or contract tracing of staff in place, and purposely allowed for infected staff member[s] to work amongst each other and inmates and are complicit in letting the virus run its course";

- ¶ 27: Alleging that the ODRC/BCI Defendants "are all aware and directly responsible for allowing [BCI] to still ride new inmates into the compound without testing [them] . . . and plac[ing] them amongst the population";

8

- ¶ 32: Alleging that the ODRC/BCI Defendants did not test inmates who went home, to transitional control, or to halfway houses, which "allow[ed] for more infection to spread from the prison back out into the community";

- ¶ 34: Alleging that the ODRC/BCI Defendants "are all aware and are directly responsible for untrained prison staff," who Plaintiffs allege conduct inadequate temperature checks and show a disregard for handwashing;

- ¶ 36: Alleging that the ODRC/BCI Defendants "with deliberate indifference are not complying with the social distancing mandate . . . [and] are in fact currently operating contrary to and opposite to this social distancing mandate";

- ¶¶ 38-43: Alleging that the ODRC/BCI Defendants violated various provisions of the Ohio Administrative Code relating to living spaces and the common areas of BCI;

- ¶ 56: Alleging that the ODRC/BCI Defendants "have purposely overcrowded the plaintiffs and all inmates which has remained a key contributor to the Defendants['] inability to contain the spread of COVID-19 and protect the prison population as a whole";

- ¶ 59: Alleging that the ODRC/BCI Defendants failed to test Plaintiffs who requested to be tested, even when symptomatic;

- ¶ 63: Alleging that the ODRC/BCI Defendants "failed to [follow mask and handwashing and social distancing mandates] in a safe manner";

- ¶ 65: Alleging that the ODRC/BCI Defendants "have tested positive for Covid-19 and did not adhere to contact tracing guidelines"; and

- ¶ 67: Alleging that the ODRC/BCI Defendants "have not provided housing units . . . with adequate cleaning materials, only diluted chemicals that have a bio degradable chemical makeup."

Accordingly, Plaintiffs allege that through the "deliberate indifference to health and safety concerns and the unsafe conditions due to the Covid-19 pandemic," the ODRC/BCI Defendants have violated Plaintiffs' Eighth Amendment rights. (*Id.* at ¶ 90.) As discussed, Plaintiffs assert claims against the ODRC/BCI Defendants in both their official and personal capacities. The Court will discuss each in turn.

### 1.    Official Capacity Claims

"'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' which is 'no different from a suit against the State.'" *McCoy v. Michigan*, 369 F. App'x 646, 654 (6th Cir. 2010) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Accordingly, because the ODRC/BCI Defendants are all state employees, each of Plaintiffs' official capacity claims against the ODRC/BCI Defendants are effectively claims against the ODRC and the State of Ohio.[2] *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity.") (internal citations omitted); *see also Parks v. Ohio Dep't of Rehab. & Corr.*, No. 2:20-CV-3229, 2020 WL 6738158, at *1 (S.D. Ohio Nov. 17, 2020) ("[A] suit against [ODRC officials] in [their official capacity] is effectively a suit against the ODRC and the State of Ohio.").

Government entities such as the ODRC are considered persons under § 1983 and "may be sued for constitutional deprivations." *McCoy v. Carlson*, No. 3:17-CV-432, 2020 WL 419439, at *4 (S.D. Ohio Jan. 27, 2020), *report and recommendation adopted*, No. 3:17-CV-432, 2020 WL 635781 (S.D. Ohio Feb. 11, 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Such government entities, however, cannot be held liable for the acts of employees or

---

[2] Plaintiffs only seek declaratory and injunctive relief against the ODRC/BCI Defendants in their official capacity. (*See* ECF No. 59 at ¶¶ 92-94.)

officials on a *respondeat superior* theory.  *Id.* (citing *Monell*, 436 U.S. at 693).  Instead, an

official policy or custom must be the "moving force" behind the alleged constitutional

deprivation.  *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).  A plaintiff may

prove an unconstitutional policy or custom by demonstrating one of the following:  "(1) the

existence of an illegal official policy or legislative enactment; (2) that an official with final

decision making authority ratified illegal actions; (3) the existence of a policy of inadequate

training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal

rights violations."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City

of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005)).

   Here, Plaintiffs have not alleged enough facts upon which the Court could rely to

conclude that the execution of an official policy or custom resulted in, or was the "moving force"

behind, the violation of their constitutional rights.  And, as the Undersigned observed in the

initial screening of Plaintiffs' original Complaint in this case, courts within the Sixth Circuit

already have found that the ODRC acted reasonably in responding to the COVID-19 pandemic.

(*See* ECF No. 38 at PAGEID #457-458 (internal citations omitted).)  The Undersigned does not

hesitate to incorporate and apply the same reasoning here, especially given Plaintiffs' allegations

which affirmatively identify a number of protective measures taken by prison officials to protect

against the spread of COVID-19.  (*See, e.g.,* ECF No. 59 at ¶ 25 (alleging that prison officials

conduct temperature checks), ¶ 33 (alleging that Defendants follow handwashing and

temperature check guidelines), ¶ 45 (alleging that Defendants implement and enforce

handwashing and temperature check policies), ¶ 66 (alleging that Defendants follow guidelines

regarding masks, handwashing, and temperature checks), ¶ 67 (alleging that Defendants provide

cleaning chemicals for Plaintiffs' housing units), ¶ 85 (alleging that Defendants have

administered COVID-19 vaccines).)[3]  As a result, the Undersigned finds that Plaintiffs' claims arise not from any ODRC policies or customs, but rather from individual actions which (in Plaintiffs' eyes) undermine or are otherwise at odds with the ODRC's reasonable response to the COVID-19 pandemic, as discussed below.

Accordingly, the Undersigned **RECOMMENDS** that Plaintiffs' official capacity claims be **DISMISSED** in their entirety as to the ODRC/BCI Defendants.  *See Nelson v. Weidimen*, No. 2:21-CV-1177, 2021 WL 1734325, at *4 (S.D. Ohio Apr. 30, 2021), *report and recommendation adopted sub nom. Nelson v. Wiedimen*, No. 2:21-CV-1177, 2021 WL 2533198 (S.D. Ohio June 21, 2021) (citing *Monell*, 436 U.S. at 708; *Moore v. CCNO S. Health Partners*, No. 3:20-cv-1278, 2020 WL 6729033, at *2 (N.D. Ohio Nov. 16, 2020) (dismissing inmate's Eighth-Amendment *Monell* claim premised upon COVID-19 exposure against municipal defendant because plaintiff failed to identify and attack a policy of municipal defendant)).

## 2.    Individual Capacity Claims.

The Eighth Amendment protects all people from "cruel and unusual punishments."  U.S. Const. amend. VIII.

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being . . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment . . . .

---

[3] *Cf. Martin v. DeWine*, No. 1:20CV481, 2022 WL 42364, at *3 (S.D. Ohio Jan. 5, 2022) (finding that Plaintiffs had failed to state a claim that Governor DeWine and various prison officials were deliberately indifferent to inmates' exposure to COVID-19, in part because Plaintiffs "**identified a number of protective measures taken to protect against the spread of the virus**; and the CDC's own guidance presupposes that some modification of its social-distancing recommendations will be necessary in institutional settings.") (internal quotations and citations omitted; emphasis added).

*Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (citing *Helling v. McKinney*, 509 U.S. 25, 32, (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200, (1989))).

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and . . . 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832, (1994) (first quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), then quoting *Helling*, 509 U.S. at 31). "The [Eighth] Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates . . . ." *Farmer*, 511 U.S. at 932-33 (internal quotation marks and citations omitted); *see also Helling*, 509 U.S. at 33 (quoting *DeShaney*, 489 U.S. at 200) (the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

Accordingly, claims under the Eighth Amendment require a plaintiff "to prove both the subjective and objective elements necessary to prove an Eighth Amendment violation." *Helling*, 509 U.S. at 35. To satisfy the objective component for a claim based upon a failure to prevent harm, "the inmate must show he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citations omitted). "To satisfy the subjective component, an inmate must show that prison officials had a sufficiently culpable state of mind." *Berksire v. Beauvais*, 928 F.3d 520, 535 (6th Cir. 2019) (internal quotation marks and citations omitted). The United States Court of Appeals for the Sixth Circuit has explained as follows:

> [T]hat state of mind is one of deliberate indifference to inmate health or safety. Although the deliberate indifference standard describes a state of mind more

13

> blameworthy than negligence, this standard is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (internal citations and quotation marks omitted)).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828. In *Cameron v. Bouchard,* 815 F. App'x 978, 984 (6th Cir. 2020), the Sixth Circuit reiterated the relevant standard as follows:

> Conditions-of-confinement claims are assessed under the "deliberate indifference" framework. *See* [*Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)]. This framework requires plaintiffs to meet two requirements. The first is "objective[ ]," and it requires the inmate to "show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 833, 114 S.Ct. 1970 (citing [*Helling*, 509 U.S. at 35]). The second is "subjective," and it requires the inmate to "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970). The official must have a subjective "state of mind more blameworthy than negligence," akin to criminal recklessness. *Farmer*, 511 U.S. at 835, 839–40, 114 S.Ct. 1970.

*Id.*, 815 F. App'x at 984. Applying this in the COVID-19 context, courts routinely have found that the objective component of a deliberate indifference claim has been met. *See Smith*, 476 F.Supp.3d at 662; *Perez-Perez v. Adducci*, 459 F. Supp. 3d 918, 926–27 (E.D. Mich. 2020). Accordingly, whether Plaintiffs have stated viable Eighth Amendment claims turns on their allegations directed to the subjective component. *Aultman v. Shoop*, No. 2:20-CV-3304, 2021 WL 3634730, at *4 (S.D. Ohio Aug. 17, 2021) (citations omitted).

Accordingly, turning to the subjective prong, the Court concludes that Plaintiffs have set forth sufficient facts upon which the Court could rely to conclude that the subjective prong is satisfied, at least for purposes of the subject initial screen. To be clear, while courts previously have held that "general conclusory allegation[s] that the prison system is ill-equipped for social

14

distancing or protecting inmates is insufficient to state a claim," Plaintiffs' allegations here go beyond that.  *See McCrary v. DeWine*, No. 1:20-CV-388, 2021 WL 320737, at *4 (S.D. Ohio Feb. 1, 2021), *report and recommendation adopted*, No. 1:20CV388, 2021 WL 1087465 (S.D. Ohio Mar. 22, 2021).  Indeed, Plaintiffs' allegations are substantially similar to those from other COVID-related cases in which courts have allowed claims to survive either an initial screening or a motion to dismiss.

For example, in *Hudson v. CoreCivic*, No. 3:21-CV-00319, 2021 WL 2952944 (M.D. Tenn. July 14, 2021), the plaintiff alleged the failure to quarantine new and symptomatic prisoners, failure to test symptomatic prisoners, refusal to give prisoners masks or sanitation materials, understaffing, placing "quarantine cells in close quarters with non-exposed prisoners," and failure to train its employees "on how to safely house inmates during the COVID-19 pandemic" and on the "structural integrity of the prison cell security locks."  *Id.* at *1.  There, the Court found that such allegations were "sufficient to state an arguably non-frivolous Eighth Amendment claim" for purposes of the initial screen.  *Id.* at *6.[4]

---

[4] In another similar case, plaintiffs alleged that a prison official moved COVID-positive inmates into plaintiffs' pod without providing plaintiffs with appropriate cleaning products or personal protective equipment to protect themselves from the COVID-positive inmates:

> Here, **Plaintiffs contend that, at TTCC, Defendant Jenkins acted with deliberate indifference by exposing Plaintiffs, who were COVID-negative, to a potentially deadly coronavirus when he made the decision to move inmates who had tested positive for COVID-19 into Plaintiffs' pod. Plaintiffs contend that they were not provided with appropriate cleaning products or personal protective equipment (PPE) to protect themselves from the COVID-positive inmates** while in such close quarters and while sharing a common shower area with over 100 other inmates, some of whom already had tested positive for COVID-19. Plaintiffs further contend that, after Jenkins moved COVID-positive inmates into Plaintiffs' pod, both Plaintiffs contracted COVID-19 and suffered emotional and physical injuries.
>
> **The Court finds that these allegations are sufficient to allege that Jenkins acted with reckless disregard to the serious risk COVID-19 poses.** Consequently,

The Undersigned reaches the same conclusion here, as Plaintiffs allege Defendants' failure to quarantine and test new and symptomatic prisoners and staff members (*see* ECF No. 59 at ¶¶ 22, 26-27), refusal to enforce handwashing, mask, contact tracing, and social distancing protocols (*see id.* at ¶¶ 63, 65), refusal to give prisoners certain sanitation materials (*see id.* at ¶ 67), exposure of non-infected prisoners to infected prisoners (*see id.* at ¶¶ 22, 26), and failure to train prison employees (*see id.* at ¶ 34). The Undersigned finds such allegations are of a sufficiently similar nature to allow Plaintiffs to pursue and develop their claims beyond the subject initial screening.[5]

This does not mean, however, the Plaintiffs have plausibly alleged claims against each of the ten ODRC/BCI Defendants. To this end, "[t]he subjective component of a deliberate indifference claim . . . must be addressed for each [defendant] individually." *Hudson*, 2021 WL 2952944, at *5 (citing *Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018) (quoting *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008))). When considering the allegations against each Defendant individually, the Court concludes that Plaintiffs only have plausibly alleged that Defendant David Gray, the Warden of BCI, knew of and disregarded the risk to health and safety caused by the Plaintiffs' conditions of confinement.

To this end, Plaintiffs' critical allegations against Defendant Gray appear in Paragraphs 24 and 84, which read in relevant part as follows:

---

> Plaintiffs state a colorable Eighth Amendment claim under Section 1983 against Defendant Jenkins in his individual capacity. Under the circumstances alleged, **Plaintiffs should have the opportunity to more fully develop this claim.**

*Jefferson v. Lee*, No. 3:20-CV-00469, 2020 WL 4586177, at *3–4 (M.D. Tenn. Aug. 10, 2020) internal citations omitted; emphasis added).

[5] This determination does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2). Nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

> **David Gray stated to the plaintiffs directly as well as other inmates he wants to let the virus "run its course,"** therefore with deliberate indifference to the health and safety of the plaintiffs purposely chose to infect the population at [BCI].
>
> \*\*\*
>
> **Warden Gray in Early April stated to plaintiffs** and other inmates who questioned him about the social distancing and hand washing and mask inside of 7 House dorm **that his concern was his staff and not the inmates** because there was no way to social distance **and they were going to "let the virus run its course,"** and achieve "Heard immunity" In other words, purposely infect everyone.

(ECF No. 59 at ¶¶ 24, 84 (emphasis added).)  It is from these allegations that the rest of

Plaintiffs' allegations arise, as Plaintiffs reiterate throughout their Amended Complaint that

Defendant Gray's actions throughout 2020 and the early parts of 2021 were "purposely done to

let [Covid-19] 'run its course,'" repeatedly purporting to quote Defendant Gray.  (*See id.* at ¶¶

24, 25, 26, 36, 37, 49, 52, 53, 55, 57, 62, 63, 64, 66, 70, 74, 84.)  These allegations sufficiently

speak to Defendant Gray's state of mind, and plausibly state claims that Defendant Gray

"subjectively perceived facts from which to infer substantial risk to the prisoner[s], that he did in

fact draw the inference, and that he then disregarded that risk."  *Comstock*, 273 F.3d at 703

(citing *Farmer,* 511 U.S. at 837).

The rest of Plaintiffs' Amended Complaint, however, does not contain such allegations

against the other ODRC/BCI Defendants.  Rather, Plaintiffs' allegations against the remaining

ODRC/BCI Defendants appear to be based on a theory of negligence, as Plaintiffs generally

allege that Defendants should have done more as prison officials to stop the spread of Covid-19.

But such allegations are insufficient, as the Amended Complaint does not include allegations that

go to any of the remaining ODRC/BCI Defendants' states of mind as it does for Defendant Gray.

*Reedy v. West*, 988 F.3d 907, 914 (6th Cir. 2021) (noting the deliberate indifference standard

"entails 'more than mere negligence' and instead is akin to 'subjective recklessness as used in

the criminal law.'") (quoting *Farmer*, 511 U.S. at 839-40)).  For this reason, Plaintiffs have

failed to state claims against the remaining ODRC/BCI Defendants.

Accordingly, the Undersigned **RECOMMENDS** that Plaintiffs' individual capacity

claims be **DISMISSED** in their entirety as to Defendants Acton, Chambers-Smith, Moore,

Bobby, Andrews, Stanforth, Murphy, Haley, and Taylor, but that Plaintiffs be **PERMITTED** to

proceed with their individual capacity claims against Defendant Gray.

**IV.**

In addition to Plaintiffs' collective claims, six individual Plaintiffs also assert medical

deliberate indifference claims against Defendant Murphy, as established below:

> The Defendant Joseph Murphy the Healthcare administrator has denied Chronic
> Care of the inmates Plaintiffs who are in need of chronic care for serious medical
> needs. Antonio Henderson who suffers from diabetes and high blood pressure and
> has a heart condition and has stents in his heart and takes medication. Jarron Earley-
> Tabor suffers from high blood pressure and takes medication, James Goodson
> suffers from a lung condition has breathing problems. Ricardo J Taborn suffers
> from HIV, Troy Mason suffers from high Blood pressure and asthma. Lonnie Hill
> suffers from high blood pressure as well as congestive heart failure. These plaintiffs
> need chronic care have been denied chronic care.
>
> The Defendant Joseph Murphy has directly denied the Chronic care treatment with
> deliberate indifference and has falsely and fraudulently reported that chronic care
> has been provided as normal to Plaintiffs and fraudulently. Several staff members
> have made Lonnie Hill who suffers from high blood pressure as well as congestive
> heart failure, aware they have not seen a doctor in over a year and a half but have
> been documented as have chronic care provided.

(ECF No. 59 at ¶¶ 47-48.)

It is well established that "[t]he Eighth Amendment forbids prison officials from

unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference

toward [his or her] serious medical needs." *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th

Cir. 2010) (internal quotations and citations omitted).  Claims for medical deliberate indifference

have "both objective and subjective components."  *Alspaugh v. McConnell*, 643 F.3d 162, 169

(6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has noted as follows:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.2004).] The subjective component regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011). Where the risk of serious harm is obvious, it can be inferred that the defendants had knowledge of the risk. *Farmer*, 511 U.S. at 842. The Sixth Circuit has also noted that in the context of medical deliberate indifference claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). Along similar lines, "[o]rdinary medical malpractice does not satisfy the subjective component." *Grose v. Corr. Med. Servs, Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010). Rather, the Sixth Circuit considers the subjective component to be satisfied where defendants recklessly disregard a substantial risk to a plaintiff's health. *Parsons v. Caruso*, 491 F. App'x 597, 603 (6th Cir. 2012).

Again, Plaintiffs must satisfy both the objective and subjective components to adequately state a claim for deliberate indifference. First, the objective component mandates that a plaintiff demonstrate a "sufficiently serious" medical need, "which is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir.

2013) (internal citations omitted). Here, the Undersigned finds that Plaintiffs Henderson, Earley-Tabor, Goodson, Taborn, Mason, and Hill have satisfied done so for purposes of surviving the initial screen on their medical deliberate indifference claims.

Specifically, Plaintiffs Henderson, Earley-Tabor, Goodson, Taborn, Mason, and Hill all allege that they have medical conditions which, in the ODRC's determination, qualify them for "chronic care." (ECF No. 59 at ¶¶ 47-48.) This allegation qualifies their conditions as "sufficiently serious" to satisfy the objective component to adequately state a claim for medical deliberate indifference. *Santiago*, 734 F.3d at 590. Plaintiffs also meet the subjective component, as they allege that Defendant Murphy has "directly denied the Chronic care treatment . . . and has falsely and fraudulently reported that chronic care has been provided as normal to Plaintiffs." (ECF No. 59 at ¶ 48.) Consistent with this Court's duty to construe Plaintiff's *pro se* Complaint liberally, *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010), this Court concludes that these allegations are sufficient to satisfy the subjective component of a deliberate indifference claim. *See also Garrett*, 374 F. App'x at 619 ("Because this Court allows *pro se* litigants some leeway in pleading standards, this litigation should proceed to resolve whether the factual underpinnings of Plaintiff's claims might be proven.").

Accordingly, the Undersigned **RECOMMENDS** that Plaintiffs Henderson, Earley-Tabor, Goodson, Taborn, Mason, and Hill's medical deliberate indifference claims against Defendant Murphy be **PERMITTED** to proceed, although the Undersigned expresses no opinion as to the merits of any, or all, of Plaintiffs' individual claims.

## V.

For these reasons, the Undersigned **RECOMMENDS** that Plaintiffs be **PERMITTED** to proceed with their Eighth Amendment claims against Defendant David Gray in his individual

capacity, but that Plaintiffs' remaining Eighth Amendment claims be **DISMISSED** in their entirety.  The Undersigned **FURTHER RECOMMENDS** that that Plaintiffs Henderson, Earley-Tabor, Goodson, Taborn, Mason, and Hill's medical deliberate indifference claims against Defendant Joseph Murphy be **PERMITTED** to proceed.  Again, however, in making this recommendation the Undersigned expresses no opinion about the ultimate merits of any of Plaintiffs' claims.

## <u>PROCEDURE ON OBJECTIONS</u>

If any party seeks review by the District Judge of this Report and Recommendation, it may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: March 4, 2022                    /s/ *Elizabeth A. Preston Deavers*
                                       **ELIZABETH A. PRESTON DEAVERS**
                                       **UNITED STATES MAGISTRATE JUDGE**