UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSEPH SHINE-JOHNSON, *et al.*,

    Plaintiffs,

  v.

MIKE DEWINE, *et al.*,

    Defendants.

:

:

:

Case No. 2:20-cv-05919
Judge Sarah D. Morrison
Magistrate Judge Elizabeth Preston Deavers

### ORDER

Plaintiff Joseph Shine-Johnson is a state inmate under the supervision of the Ohio Department of Rehabilitation and Corrections ("ODRC") at Belmont Correctional Institution, proceeding without the assistance of counsel. (ECF No. 1.) Along with 15 fellow inmates, he initiated this action in November 2020 against Defendants Governor Mike DeWine, Amy Acton (then-director of the Ohio Department of Health), and ODRC and Belmont employees regarding the conditions of confinement during the COVID-19 pandemic. (*Id.*)

After the initial complaint was filed, Plaintiffs Bobby Nix and N. Sabir Abdullah were dismissed for lack of prosecution. (ECF No. 37.) The Magistrate Judge issued a report and recommendation, recommending that the Court dismiss Plaintiffs' claims in their entirety and advising Plaintiff James Goodson that he had the right to file a separate action to pursue claims for medical deliberate indifference. (ECF No. 38.) After various Plaintiffs' filed objections, the Magistrate Judge withdrew the report and

recommendation and granted all Plaintiffs leave to file an amended complaint (ECF No. 45), which was timely filed in May 2021 (Am. Compl., ECF No. 59).

Before the Court are objections to the Magistrate Judge's Report and Recommendation issued after an initial screen of the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A (R&R, ECF No. 69; ECF Nos. 71, 73, 78), and a "Motion to Clarify, Object and Request a Certificate of Appealability" (ECF No. 83). The Court discusses each in turn.

## I. REPORT AND RECOMMENDATION

In her Report and Recommendation, the Magistrate Judge recommends that Plaintiffs be permitted to proceed with their collective claims against Defendant David Gray (Warden of Belmont), in his individual capacity, but that Plaintiffs' remaining collective claims be dismissed in their entirety. (R&R, PageID 819.) The Magistrate Judge also recommends that Plaintiffs Antonio Henderson, Jarron Earley-Tabor, Sr., James Goodson, Ricardo Taborn, Troy Mason, and Lonnie Hill be permitted to proceed with their individual medical deliberate indifference claims against Defendant Joseph Murphy (Belmont Healthcare Administrator). (*Id.*)

The State of Ohio appeared as an Interested Party and objected on behalf of Defendants Gray and Murphy. (ECF Nos. 70, 71.) Plaintiff Shine-Johnson objected (ECF No. 73) and filed a Response to Interested Party's Objection (ECF No. 78).

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject,

or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

### A. The State's Objection

The State makes three arguments in its objection as to why Plaintiffs' remaining claims should not have survived the initial screen. Each argument fails.

The Magistrate Judge found that Plaintiffs had plausibly alleged that Defendant Gray, in his individual capacity, knew and disregarded the health and safety risks caused by Plaintiffs' conditions of confinement in violation of their Eighth Amendment rights. (R&R, PageID 834.) The State first argues that the amended complaint "fails to set forth facts alleging any specific act taken by Defendant Gray in violation of the Constitution, making it impossible for the Court to infer the requisite personal involvement demanded of every § 1983 action." (ECF No. 71, PageID 846.) The State urges the Court to read the amended complaint as an attempt "to ascribe the collective action of multiple defendants and/or ODRC to Defendant Gray without demonstrating personal involvement." (*Id.*)

"Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012); *see generally Hardin v. Straub*, 954 F.2d 1193, 1199 (6th Cir. 1992) (explaining differences between official and individual capacity § 1983 suits). Personal liability "must be based on actions of that defendant" and "not based on any problems caused by the errors of others." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991). "Supervisory officials are not liable in their individual capacities unless they either encouraged the specific incident of misconduct or in some other way

3

directly participated in it." *Heyerman*, 680 F.3d at 647. "At a minimum," for an individual capacity claim against a supervisor to survive, plaintiff must allege he or she "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Id.* at 647.

Despite the State urging otherwise, the amended complaint contains sufficient allegations detailing how Defendant Gray ignored Covid-19 protocols and encouraged his employees to do the same:

- "David Gray stated to plaintiffs directly as well as other inmates he wants to let the virus 'run its course'" (Am. Compl., ¶ 24);
- "Warden Gray in Early April stated to plaintiffs who questioned him about the social distancing and hand washing and mask [*sic*] inside of 7 House dorm that his concern was his staff and not the inmates because there was no way to social distance and they were going to let the virus '[r]un its course,' and achieve 'Heard immunity' [*sic*] In other words, purposely infect everyone." (*Id.* ¶ 84; *see* R&R, PageID 835.)

Thus, Plaintiffs allege Defendant Gray was indifferent to adherence to social distancing protocols and other measures meant to prevent the spread of the virus. He expressed concern about his staff, not the inmate population. As the Magistrate Judge explains, Defendant Gray and those he supervised then took actions in accordance with his careless attitude about the spread of the virus: "[i]t is from these allegations that the rest of Plaintiffs' allegations arise, as Plaintiffs reiterate throughout their Amended Complaint that Defendant Gray's actions throughout 2020 and the early parts of 2021 were 'purposely done to let [Covid-19] 'run its course'" repeatedly purporting to quote Defendant Gray." (R&R, PageID 835 (citing Am. Compl., ¶¶ 24–26 (virus exposure and failure to contact trace), 36, 37 (not engaging in proper hygiene practices or social distancing), 49 (providing false information about testing and

number of cases), 52, 53, 55, 57, 62–64 (refusal to enforce testing, masking, handwashing, and social distancing protocols), 66, 70, 74, 84.))

Next, the State contends that the attachments to the amended complaint demonstrate that Defendant Gray took steps to stop the spread of Covid-19 and therefore undermine Plaintiffs' allegations. (ECF No. 71, PageID 847.) For example, inmates were moved to different housing units, the law library was closed, and inmates' temperatures were taken. (*Id.* (citing ECF No. 59-1 at 708–09.))

The federal *in forma pauperis* statute, recognizing that a nonpaying litigant "lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits," provides that a court shall dismiss a case if it determines the action, *inter alia*, fails to state a claim on which relief may be granted. *See Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (citation omitted); 28 U.S.C. §§ 1915(e)(2), 1915A. The same "dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under [§§ 1915(e)(2), 1915A] because the relevant statutory language tracks the language of Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court must construe the complaint in the light most favorable to the plaintiff and determine whether the factual allegations present a plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should

5

therefore be construed liberally." *Garrett v. Belmont Cnty. Sheriff's Dep't*, 374 Fed. Appx. 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

The Court finds Plaintiffs have met their less stringent, plausibility pleading burden. The State urges the Court to ignore certain allegations related to Defendant Gray's deliberate indifference to Covid-19 risks at Belmont and focus on others demonstrating steps were taken there to prevent the spread of the virus, but the Court does not need to parse the pleading's attachments at this early stage. Moreover, ODRC's Covid-19 policies and procedures are not at issue (*see* R&R, PageID 829); rather, the Court's inquiry is focused on Defendant Gray's individual actions.

The State's final argument is that Plaintiffs do not sufficiently allege physical injury as they must under § 1997e(e) of the Prison Litigation Reform Act. (ECF No. 71, PageID 848; *see* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ."). This argument also fails.

While Plaintiffs do seek compensatory damages and discuss mental and emotional injury resulting from the conditions of confinement at Belmont, they also seek declaratory and injunctive relief, as well as punitive damages. (Am. Compl., ¶¶ 92–99.) The Sixth Circuit has explained why § 1997e(e) does not bar an action like Plaintiffs':

> At the very least, [plaintiff] Small may continue to pursue his action based on the requests for non-compensatory relief. There is widespread agreement among our sister circuits that § 1997e(e) allows prisoners alleging non-physical injury to still pursue claims for nominal damages, as well as injunctive and declaratory relief. *See generally Aref v. Lynch*, 833 F.3d 242, 262–67 & n.15 (D.C. Cir. 2016) (describing the precedential landscape in detail). Most of our sister circuits also interpret the statute to

6

> allow claims for punitive damages. *See id.* at 266. And we recently recognized that § 1997e(e) "does not bar claims for constitutional injury that do not also involve physical injury." *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015). Thus, in so far as Small seeks forms of relief other than compensatory damages, his case may proceed. *See Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019) (suggesting that § 1997e(e) allows prisoners to seek nominal and punitive damages, as well as injunctive relief, for alleged Eighth Amendment violations).

*Small v. Brock*, 963 F.3d 539, 543 (6th Cir. 2020).

The State's Objection is **OVERRULED**. (ECF No. 71.)

### B. Plaintiff Shine-Johnson's Objection and Response to the State

Despite their being numerous Plaintiffs in this case, only Plaintiff Shine-Johnson filed an Objection to the Report and Recommendation (ECF No. 73) and Response to Interested Party's Objection (ECF No. 78). On April 1, 2021, the Court advised Plaintiffs that it would "strike any future filings that are applicable to this litigation unless **ALL** Plaintiffs have signed the document." (ECF No. 35); *see also McLaurin v. Bagley*, No. CV 2:17-11263, 2017 WL 1738031, at *5 (E.D. Mich. May 4, 2017) (explaining that multiple prisoner-plaintiffs proceeding in a single action often "invites violations of Rule 11(a), which requires every pleading to be signed by all *pro se* plaintiffs.") Nevertheless on multiple occasions, Plaintiff Shine-Johnson has failed to heed this warning. (*See* ECF Nos. 68, 73, 77, 78.) Plaintiff Shine-Johnson's filings are **STRICKEN**. (ECF No. 73, 78.)

### C. Official Capacity Claims for Prospective Injunctive Relief

Where there has been no objection to a particular recommendation, the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court must "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See also Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1

(S.D. Ohio Oct. 13, 2021) (Cole, J.) (citing cases). Given this obligation, the Court modifies the Report and Recommendation.

When analyzing Plaintiffs' Eighth Amendment deliberate indifference claims against the ODRC/BCI Defendants[1] in their official capacity, the Magistrate Judge cited *McCoy v. Carlson* for the proposition that

> [g]overnment entities such as the ODRC are considered persons under § 1983 and "may be sued for constitutional deprivations." *McCoy v. Carlson*, No. 3:17-CV-432, 2020 WL 419439, at *4 (S.D. Ohio Jan. 27, 2020), *report and recommendation adopted*, No. 3:17-CV-432, 2020 WL 635781 (S.D. Ohio Feb. 11, 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). Such government entities, however, cannot be held liable for the acts of employees or officials on a *respondeat superior* theory. *Id.* (citing *Monell*, 436 U.S. at 693). Instead, an official policy or custom must be the "moving force" behind the alleged constitutional deprivation. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).)

(R&R, PageID 828–29.) The Magistrate Judge then discussed whether Plaintiffs' amended complaint contained sufficient factual allegations of an official policy or custom that was a moving force behind the alleged constitution deprivation, concluding it did not. (*Id.* PageID 829.) But where state entities and employees are sued, an Eleventh Amendment/sovereign immunity analysis applies rather than a "moving force" analysis under *Monell*. The Supreme Court has held:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). As such, it is no different from a suit against the State itself. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Monell, supra*, at 690, n. 55, 98 S.Ct., at 2035, n. 55. . . . We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.

---

[1] The ODRC/BCI Defendants, as defined in the Report and Recommendation, include Defendants Acton, Chambers-Smith, Moore, Bobby, Andrews, Stanforth, Gray, Murphy, Haley, and Taylor.

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory or monetary relief" against a state and its agencies, but does not preclude suits for prospective injunctive relief. *McCormick v. Miami Univ.*, 693 F.3d 654, 661–62 (6th Cir. 2012) (quoting *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) and citing *McKey v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000)). Eleventh Amendment immunity also applies to state employees who are sued in their official capacities for retrospective relief. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)); *see Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017).

While the "moving force" analysis under *Monell* does not apply to Plaintiffs' claims brought against the ODRC/BCI Defendants in their official capacities, these claims are still barred by sovereign immunity except where Plaintiffs seek prospective injunctive relief. Although the prospective injunctive relief Plaintiffs seek is not barred by sovereign immunity, that relief is specifically tied to the Covid-19 pandemic. (*See* Compl ¶¶ 93 ("A preliminary and permanent injunction ordering all said defendants . . . to eliminate overcrowding of inmates and reduce the population and correct housing units to the ACA standards for the Institution in which inmates are incarcerated to reduce the risk of COVID-19 . . . ."), 94 ("An injunctive relief to provide a compassionate release and or pardon to Said plaintiffs . . . until all safe prison conditions are met and Covid-19 pandemic subsides."). Given the current state of the

9

Covid-19 pandemic, the Magistrate Judge should determine whether these claims are moot.[2]

The Court **ADOPTS AND AFFIRMS IN PART** the Report and Recommendation. (ECF No. 69.) The Court **RECOMMITS** Plaintiffs' official capacity claims for prospective injunctive relief against the ODRC/BCI Defendants to the Magistrate Judge for further §§ 1915(e)(2), 1915A review and analysis under the mootness doctrine.

## II.    MOTION TO CLARIFY

The Magistrate Judge put on an Order striking Plaintiffs' "Motion for Cease and Desit [*sic*] Order or for the Court to Comply with ODRC Policy." (ECF No. 80; *see* ECF No. 79.) She explained Plaintiffs' Motion was improper as it appeared to pursue claims related to Plaintiffs' mail being reclassified and/or opened outside of their presence, and the Court had previously and repeatedly held such claims were not related to the claims at issue in this litigation. (ECF No. 80; *see* ECF Nos. 68, 77.) Plaintiffs filed a "Motion to Clarify, Object and Request a Certificate of Appealability" asking for clarification because they do not understand why they have to open a separate action to have prison officials comply with mailing procedures. (ECF No. 83.) Plaintiffs also object to the Order and "request this court to grant a certificate of appeal ability [*sic*] or give the final say so to the [Undersigned]." (*Id.* PageID 997.) The Court construes the Motion as an objection.

---

[2] Nothing herein precludes the Magistrate Judge from analyzing the mootness of any or all of Plaintiffs' other surviving claims.

When a party objects to a magistrate judge's ruling on a non-dispositive motion, the district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. 72(a). Likewise, 28 U.S.C. § 636(b)(1)(A) provides that "[a] judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." The "clearly erroneous" standard applies to factual findings and the "contrary to law" standard applies to legal conclusions. *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992) (Kinneary, J.) (citations omitted). A factual finding is "clearly erroneous" when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). A legal conclusion is "contrary to law" when the magistrate judge has "misinterpreted or misapplied applicable law." *Hood v. Midwest Sav. Bank*, No. C2-97-218, 2001 WL 327723, at *2 (S.D. Ohio Mar. 22, 2001) (Holschuh, J.) (citations omitted).

The Court has carefully reviewed the record and considered all relevant briefing. The Magistrate Judge's Order is neither clearly erroneous nor contrary to law. Plaintiffs' "Motion to Clarify, Object and Request a Certificate of Appealability" is **OVERRULED**. (ECF No. 83.)

III.  **CONCLUSION**

The State of Ohio's Objection is **OVERRULED**. (ECF No. 71.) Plaintiff Shine-Johnson's Objection to the Report and Recommendation (ECF No. 73) and Response to Interested Party's Objection (ECF No. 78) are **STRICKEN**. The Court **ADOPTS AND AFFIRMS IN PART** the Magistrate Judge's Report and Recommendation. (ECF No.

11

69.) The Court also **RECOMMITS** Plaintiffs' official capacity claims for prospective injunctive relief against the ODRC/BCI Defendants to the Magistrate Judge for further §§ 1915(e)(2), 1915A review and analysis under the mootness doctrine. Plaintiffs are **PERMITTED** to proceed with their collective claims against Defendant David Gray in his individual capacity. Plaintiffs' remaining collective claims are **DISMISSED** in their entirety. Plaintiffs Henderson, Earley-Tabor, Goodson, Taborn, Mason, and Hill's individual medical deliberate indifference claims against Defendant Joseph Murphy are **PERMITTED** to proceed.

The Court also **OVERRULES** Plaintiffs' "Motion to Clarify, Object and Request a Certificate of Appealability" (ECF No. 83) and **ADOPTS** and **AFFIRMS** the April 26, 2022 Order (ECF No. 80).

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**